1     IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
2
Criminal Action No. 13-cr-00488-WJM
3
UNITED STATES OF AMERICA,
4
        Plaintiff,
5
vs.
6
MICHAEL IVORY COLLINS,
7
        Defendant.
8   _____

9
                     **REPORTER'S TRANSCRIPT**
10                          (Sentencing)

11  _____

12          Proceedings before the HONORABLE WILLIAM J. MARTÍNEZ,

13  Judge, United States District Court for the District of

14  Colorado, commencing at 2:06 p.m., on the 26th day of August,

15  2014, in Courtroom A801, United States Courthouse, Denver,

16  Colorado.

17

18

19

20

21

22

23

24  Proceeding Recorded by Mechanical Stenography, Transcription
        Produced via Computer by Gwen Daniel, 901 19th Street,
25      Room A201, Denver, Colorado, 80294, (303) 571-4084

1        **APPEARANCES**

2            Robert Brown, Attorney at Law, U.S. Attorney's

3    Office-Denver, 1225 17th Street East, Suite 700, Denver, CO

4    80202, appearing for the Plaintiff.

5            Matthew C. Golla, Attorney at Law, Office of the

6    Federal Public Defender, 633 Seventeenth Street, #1000, Denver,

7    CO 80202, appearing for the Defendant.

8                    *   *   *   *   *

9                    **PROCEEDINGS**

10      (In open court at 2:06 p.m.)

11          THE COURT:  We are on the record in 13-cr-488, United

12   States of America vs. Michael Ivory Collins.

13          I'll take appearances of counsel.

14          MR. BROWN:  Robert Brown appearing for the United

15   States, your Honor, on behalf of Mr. Sibert, who is in trial

16   with Judge Moore.

17          THE COURT:  All right.  Good afternoon.

18          MR. BROWN:  Afternoon.

19          MR. GOLLA:  Good afternoon, your Honor.  Matthew

20   Golla, appearing on behalf of Mr. Michael Collins, who is

21   seated at counsel table.

22          THE COURT:  Good afternoon to the two of you.

23          Will the probation officer please identify herself for

24   the record.

25          THE PROBATION OFFICER:  Nicole Peterson with

1    probation.  Good afternoon, your Honor.

2              THE COURT:  Good afternoon.

3              Mr. Golla, will you and Mr. Collins please approach

4    the lectern.

5              The record reflects that on the -- I am sorry.  First,

6    Ms. Finney, we have to have the defendant sworn in.

7         (Defendant sworn.)

8              THE COURT:  The record will reflect that on the 10th

9    of March of this year, pursuant to a Plea Agreement reached

10   with the government, Mr. Collins entered a plea of guilty to

11   and he was convicted of Count One of the Indictment charging

12   him with being a felon in possession of a firearm and

13   ammunition, both in violation of 18, United States Code,

14   Sections 922(g)(1) and 924(a)(2).

15             In his Plea Agreement the defendant also agreed to

16   forfeit all title and interest to the property itemized in that

17   agreement.

18             We are here for the sentencing of the defendant.

19             Counsel I am going to give you an opportunity later to

20   address your sentencing-related motions and positions, but for

21   now please summarize your sentencing recommendations.

22             Mr. Brown, let's begin with you.

23             MR. BROWN:  Your Honor, the government filed a

24   sentencing statement, docket No. 35, in which we recommended,

25   as the Probation Department did, a sentence of 70 months.

1          THE COURT:  All right.

2          Mr. Golla.

3          MR. GOLLA:  Your Honor, I am asking the Court to

4   sentence Mr. Collins to a term of 48 months, but I am also

5   asking the Court to designate the state facility where he will

6   be transferred back to serve a parole sentence that he has

7   still with respect to this matter.  And I have submitted a

8   motion for a variance that outlines my arguments, and I will

9   address those arguments later on in the hearing.

10          THE COURT:  Mr. Brown, does the government have any

11  objections to the PSIR?

12          MR. BROWN:  No, your Honor.

13          THE COURT:  All right.  Mr. Golla, the defendant filed

14  an objection at ECF 31.  Do you have anything to add to your

15  written motion?

16          MR. GOLLA:  I do not, your Honor.  Well, I do, I do,

17  your Honor.  What I would add is this, is that technically I

18  can't dispute the fact that according to the Guidelines if you

19  are in custody within five years of the commission of an

20  offense that that counts, and the sentence was more than 60

21  days, that counts for two points toward the defendant's

22  criminal history.

23          However, I would point out to the Court that in this

24  particular conviction that we're addressing, Mr. Collins was

25  convicted when he was 11 years old, and the conviction then

1    dragged on for a period, from 2005, when he was sentenced,

2    December, until July of 2009, when his probation was revoked

3    and he received zero to 18 months' imprisonment.  I want to

4    point out, before that -- his probation was revoked twice prior

5    to that -- I am sorry, three times.

6         Although I don't have a crystal ball to support all

7    this, but I would recommend to the Court that since he was a

8    juvenile, since his parents were not in the picture, since his

9    mother abandoned him, since he was in foster care, this case

10   dragged on, specifically the harassment case out of Arapahoe

11   County.  Whereas, if he was an adult, and he was 18 years old,

12   and he was convicted of this particular offense, I would submit

13   to the Court that it wouldn't have lasted that long.  He would

14   have been revoked, maybe been given a term of imprisonment, but

15   he wouldn't have been revoked two or three times before the age

16   of -- in 2009 he would have been 16 years old.  That's when he

17   finally received a prison sentence.

18        So technically it does apply, but I would submit to

19   the Court that the circumstances of this particular conviction

20   would warrant the Court not applying it for purposes of his

21   criminal history.

22        THE COURT:  First let me hear from Mr. Brown.  Do you

23   have any response to that?

24        MR. BROWN:  Your Honor, surprisingly, Mr. Golla made

25   some sense.  I think the Court --

1          THE COURT:  Well, it's not surprising that he makes

2    sense.

3          MR. BROWN:  Not surprising that he makes sense, it

4    might be surprising that I agree with him.

5          THE COURT:  Okay.  I am sympathetic to that argument,

6    but, Mr. Golla, I don't -- I've looked at this pretty closely.

7    I don't see a basis for me to just ignore the Guideline.  I

8    think Ms. Peterson is right, I think it applies.  And you've

9    not provided me any case law or any authority that just allows

10   me to just ignore it.  Based on that -- because I think, as you

11   yourself said, the Guideline technically applies.  Well, it

12   applies.  So based on that I am going to overrule your

13   objection.  But the grounds and the arguments that you've

14   raised, I am going to consider later on in terms of a -- of the

15   matter of whether his criminal history points overrepresent --

16   substantially overrepresent his criminal history based on the

17   application of these two criminal history points.

18         Because what happened in paragraph 27, what you've

19   objected to, is it added two criminal history points, which

20   then increased Mr. Collins' criminal history by one level.

21         So while I am overruling this objection, I am going to

22   consider it later in the hearing.

23         Do you have anything to add to your objection to

24   paragraph 28 regarding the language in the report regarding

25   threatening conduct?

1    MR. GOLLA:  No, I do not, your Honor.

2    THE COURT:  Okay.  With respect to that objection, I

3 find that that objection will not affect sentencing and that I

4 will not consider that matter in fashioning the sentence to

5 impose in this case.  So under Rule 32(i)(3)(B) I find that no

6 ruling on that objection is necessary.

7    Turning to motions, I don't see a written motion.

8 Mr. Brown, is there a motion from the government for an

9 additional one-level reduction in the offense level for

10 acceptance of responsibility?

11    MR. BROWN:  Yes, your Honor, the government moves for

12 that.

13    THE COURT:  All right.  There being no objection, the

14 government's oral motion is granted.  An additional one-level

15 of the offense level will be reduced given the defendant's

16 acceptance of responsibility.

17    So pursuant to the Sentencing Guidelines and the terms

18 of the parties' Plea Agreement, which I have accepted, and my

19 ruling on the government's oral motion in regards to acceptance

20 of responsibility, I find that the total Offense Level in this

21 case is 21.  Based on my ruling on defendant's objection to the

22 probation officer's criminal history point determination, I

23 find that the defendant's Criminal History Category continues

24 to be V.  This yields an advisory Guideline sentencing range of

25 70 to 87 months, a period of supervised release of one to three

1  years, a fine range of 7500 to $75,000 and a special assessment

2  of $100.

3      Do counsel agree the Court has correctly calculated

4  the Guideline sentencing range in this case?

5      Mr. Brown.

6      MR. BROWN:  Yes, your Honor.

7      THE COURT:  Mr. Golla.

8      MR. GOLLA:  Yes, your Honor.

9      THE COURT:  All right.  At this time I will take up

10  the Defendant's Motion for a Downward Variance, ECF 29.

11      Mr. Golla, do you have anything to add to your written

12  motion?

13      MR. GOLLA:  Your Honor, I do want to add a few things.

14  I want to point out to the Court, as I did in the motion for a

15  variance, that one of the things I am looking at in particular

16  with Mr. Collins' situation and the Guidelines is the

17  four-level increase that he received pursuant to 2K2.1(b)(4),

18  which was amended in 2006.  It used to be a two-level increase

19  whether the firearm was stolen or whether it had an obliterated

20  or altered serial number.  In 2006 of course it changed to a

21  two offense level increase with respect to whether the

22  firearm -- or any firearm had an altered or obliterated serial

23  number.

24      The point I am trying to make to the Court, and I hope

25  I made in my variance motion, is that the Guidelines really

1  didn't give a sufficient or detailed explanation as to why

2  there was any reason to increase that particular enhancement

3  two more levels.

4         From 1989 to 2006 the Guidelines worked under that

5  framework.  Firearms were out in the street, firearms were

6  being possessed by individuals who were being prosecuted in

7  federal court.  And there's really no justification for an

8  increase of two additional levels just because the firearm had

9  an obliterated or altered serial number.

10        I say that because it really is in a lot of ways a

11  strict liability type situation.  The individual gets the

12  firearm.  He or she knows whether the serial numbers are

13  obliterated, but they didn't actually obliterate the serial

14  number most of the time.  So it's basically a situation where

15  the individual gets the firearm, he possesses it, and I think

16  they give a reason in the actual commentary itself with respect

17  to the amendment that it reflects both the difficulty in

18  tracing firearms with altered or obliterated serial numbers and

19  increased markers for these type of weapons.

20        I don't see any statistics or any justification that

21  would support that rationale with respect to this particular

22  enhancement.

23        That's one of the arguments I have with maybe,

24  hopefully, lowering Mr. Collins' sentence in this matter.

25        The other thing that I want to point out to the Court,

1   obviously, is that, you know, the Court sees a lot of these

2   cases.  It comes across individuals who have a difficult family

3   background, and I think that's sort of a common theme in many

4   cases in federal court, especially in firearm cases.  But I

5   would point out that Mr. Collins' situation seems to stand out,

6   and not in stark contrast, but in huge contrast to other

7   individuals who grew up with a family that has a supporting

8   mother and father or maybe a divorced family where there's some

9   issues with the remaining parent who is taking care of the

10  individual.

11          But Mr. Collins really had no one in his corner from

12  the get-go.  Age 11 when he was first involved in trouble.

13  Sometime thereafter at the age of 14 his mother basically

14  abandoned him and left him within the system of Colorado to be

15  dealt with, whether in foster care or juvenile placement.  I

16  know a lot of the blame rests on Mr. Collins' shoulders.

17          But I think it's a very difficult situation to put a

18  13, 14-year-old boy in and have him find his way through life,

19  especially when Mr. Collins, you know, received some

20  information from his mother as to the circumstances surrounding

21  his birth.  I think that's outlined in some particularity in

22  the Presentence Report.

23          His stepfather smoked crack cocaine.  His other

24  father, his first father, was I believe sentenced to prison.  I

25  think that his circumstances were that he gravitated toward the

1    wrong people.  Unfortunately that happens in a lot of these

2    cases.

3            And putting him in prison for 70 months, I see the

4    punitive rationale behind the Guidelines, but I don't see how

5    70 months is going to rehabilitate him any more than a 48-month

6    sentence.  Because here's what's going to happen:  He's going

7    to go to prison, he's going to have to serve his time.  I don't

8    know that the programs are really that beneficial in the Bureau

9    of Prisons.  He's going to get out, he's going to be in the

10   same exact situation.  He's going the hopefully not be back

11   here in Denver and be involved with the same individuals he was

12   involved with.  But hopefully he will be more mature.  He's a

13   young man now, I believe in his early 20s when he gets out.

14   He's going to need the treatment and the care that supervised

15   release will hopefully give him.

16           I know the Court hears this argument time and time

17   again, but he -- and I know --

18           THE COURT:  The frequency of which I hear an argument

19   doesn't detract from its merit.

20           MR. GOLLA:  I am grateful for that, your Honor.  But I

21   would say this, that he -- other individuals, maybe they are

22   successful, maybe they get out of these situations in juvenile

23   places and make their way, but unfortunately I think the vast

24   majority of them have a very difficult time.

25           Mr. Collins is a bright individual, and unfortunately

1    has no employment skills, has never really worked.

2            I just hope that down the road that he will find some

3    skills through his sentence and that he will come out and he

4    will make mature choices.  I hope he will.  I think he will.

5            But I would point out that his circumstances and his

6    personal history and background I think tilt this case toward a

7    downward variance.

8            The facts of the case are simple.  He had a gun.  He

9    was riding on a bicycle through the streets of Denver.  They

10   pulled him over.  He threw the backpack over a fence.  The gun

11   was recovered.  He was involved with a local gang at that

12   particular time, and we're not going to dispute that.  But I

13   think the danger that he posed to the public I think can be

14   adequately addressed with a sentence of 48 months that runs

15   concurrent with whatever parole sentence he receives, which I

16   do expect to be about three years, because the anticipated

17   mandatory -- the mandatory release date for him with his parole

18   is December 2016.  I think the estimated parole release date is

19   April 2013.  There's no guarantee he will be released.

20           THE COURT:  April what -- that's in the past.

21           MR. GOLLA:  April 2013.

22           THE COURT:  That's in the past.

23           MR. GOLLA:  I am sorry, April 2000 --

24           THE PROBATION OFFICER:  '15.

25           MR. GOLLA:  2015, I am sorry.  April 2015.

1          THE COURT:  All right.

2          MR. GOLLA:  I think he may or may not get out that

3     particular date, but I would ask the Court to consider that

4     future sentence that he does have to serve with respect to his

5     parole matter.

6          THE COURT:  All right.

7          Mr. Brown, do you wish to be heard on the motion?

8          MR. BROWN:  Not on -- well, your Honor, I would

9     just -- I mean from the juvenile record that he had, I guess he

10    fortunately had some diagnoses by professionals.  And I think

11    Mr. Golla is correct in the sense that Mr. Collins didn't have

12    much of a chance, and I guess it's fairly predictable what

13    would happen to him.  It would be nice if the Court could

14    fashion some type of a sentence that would give him some hope.

15    I don't know if that's possible, though.

16         THE COURT:  Well, I appreciate you taking that

17    position.

18         MR. BROWN:  Thank you.

19         THE COURT:  All right.  Before ruling on the

20    defendant's motion, I am going to consider the Section 3553(a)

21    sentencing factors in light of the specific facts of this case.

22         With respect to the history and characteristics of

23    this defendant, the record establishes that Mr. Collins is 21

24    years old.  He is a citizen of the United States.  He reports

25    that he attended Montbello, Hinkley and East High Schools in

1  the Denver area, but that he quit school before receiving his

2  high school diploma.

3  Mr. Collins also claims to have received his GED while

4  in custody in 2010, although this has not been independently

5  confirmed.

6  As Mr. Golla points out in his downward variance

7  motion, Mr. Collins was raised by a mother and stepfather who

8  both emotionally abused Mr. Collins.

9  Until age 7 his life was spent in a variety of places

10  without any continuity of a home environment.  It was during

11  this time frame that he lacked solid schooling and a stable

12  environment.  After the age of 7 the defendant's juvenile years

13  were spent either in the Department of Youth Corrections or a

14  variety of out-of-home placements or foster care.

15  The defendant has never been married and has no

16  children.  He has been in a relationship with Pluazette Dudley,

17  age 36, for approximately one year.  Ms. Dudley is employed as

18  a teacher at South Middle School in Aurora, Colorado.

19  Mr. Collins lived with Ms. Dudley for eight days prior to his

20  arrest.  The defendant and Ms. Dudley speak on the telephone

21  daily and she visits him in custody a few times a month.

22  The record establishes that Mr. Collins has struggled

23  with mental health issues since 2001 when he was at the

24  Riverside Hospital in Illinois, and later underwent mental

25  health treatment at the Streamwood Behavioral Health Center

1  also in Illinois.

2  A review of the defendant's medical health treatment

3  records indicates he has been consistently diagnosed since the

4  age of 13 with attention deficit hyperactivity disorder,

5  bipolar disorder and conduct disorder.  For the past eight

6  years he has been prescribed medications of various dosages to

7  help regulate his mental health illnesses.

8  According to the probation officer, it appears from

9  the defendant's medical records that he would likely benefit

10  from mental health treatment and medication.

11  With regard to his work history, the defendant reports

12  that he has never held gainful lawful employment.

13  With regard to Mr. Collins' criminal history,

14  according to the PSIR he has two juvenile criminal

15  adjudications.  He has been assessed 11 criminal history points

16  by the probation officer, and is before me on his second adult

17  felony conviction.  The defendant has a prior adult felony

18  conviction for burglary.

19  Turning to the nature and circumstances of the

20  offense, the record establishes that on October 30th, 2013,

21  Denver police officers saw the defendant riding his bicycle

22  with no lights, as required by law, and he passed through a red

23  light at Park Avenue in Denver without stopping.

24  The officers activated their emergency lights and

25  ordered the defendant to stop and get off his bicycle.

1  Mr. Collins did not stop as directed to and he began to flee on

2  the bike.  Denver police officers began to chase the defendant,

3  who continued to flee several blocks.  Eventually the defendant

4  was taken into custody where the officers who caught him

5  noticed that he was no longer wearing his backpack.

6  Officers traced back to the area where Mr. Collins had

7  jumped off his bike and fled by foot.  Witnesses contacted the

8  officers and informed them that the defendant had thrown his

9  backpack over a schoolyard fence.  The officers located the

10  backpack and inside officers located a loaded Intratech Model

11  TEC22, which is a .22 caliber pistol, with an obliterated

12  serial number.  The defendant knowingly possessed the Intratech

13  .22 caliber pistol after having suffered a felony conviction

14  for second degree burglary of a building in Denver.  Ten rounds

15  of ammunition were located in the pistol's magazine.

16  Subsequent investigation determined that the firearm

17  was a functioning firearm and that neither the firearm nor the

18  ammunition was manufactured in the State and District of

19  Colorado.

20  The defendant has been in continuous custody since the

21  30th of October, 2013, or for approximately ten months.

22  Pursuant to Section 3553(a)(5), I have considered the

23  applicable Guidelines policy statements addressing a possible

24  departure in this matter.  I return to Mr. Collins' objection

25  to his two criminal history points allocated to his criminal

history for a misdemeanor conviction which occurred nine years ago. It is true that Mr. Collins was technically a juvenile placement within five years of the commission of the present offense. I agree with the defendant, however, that it is clear from the record that the only reason that this was the case is because of Mr. Collins' rather unique predicament of his abandonment by his mother and subsequent placement in foster case, both of which were factors that caused an extension of court supervision in the case that would otherwise have been terminated prior to the five years if he had been an adult. In my view this result is manifestly unjust. And while I was constrained under the applicable Guidelines and interpretive case law from sustaining the defendant's objection to this state of affairs, I have other means at my disposal of not allowing such an unjust result to stand.

For these reasons I find that as a result of the two criminal history points assessed against the defendant for his misdemeanor conviction in 2005 of harassing a fellow student, his resulting Criminal History Category of V substantially overrepresents the seriousness of his criminal history.

Therefore, pursuant to Section 4A1.1(3)(b) I will deduct two criminal history points from the defendant's criminal history and depart downward to a Criminal History Category of IV. This results in a Guideline sentencing range of 57 to 71 months for the defendant's Offense Level of 21.

1          Ms. Peterson, do you wish to make any statement at

2     this time on behalf of the Probation Office?

3          THE PROBATION OFFICER:  No, your Honor.

4          THE COURT:  Thank you.

5          Mr. Collins, do you wish to make any statement to the

6     Court on your own behalf before I announce your sentence?

7          THE DEFENDANT:  The only thing I want to say is just

8     have another opportunity, trying harder, like that, that's

9     about it.

10         THE COURT:  You've had a very difficult life.  I see,

11    though, in your record based on your academic performance that

12    you appear to have been a good student; is that correct?

13         THE DEFENDANT:  Yeah.  I think I became more

14    academically in tune when I went to prison, though.

15         THE COURT:  Well, I know.  And I am going to have to

16    give you a sentence today, and that's going to hopefully be the

17    end of this chapter.  What I really hope is that even though

18    you have had the deficiency in your upbringing that most of us

19    would want to avoid at all costs, that you seem to have the

20    potential inside of you to do a lot more with your life.  So I

21    really do hope that once you get out of prison and serve your

22    time for this offense that this will be the last time that you

23    have interaction with the criminal justice system.

24         You have your whole life before you.  You are only 21

25    years old.  And when you get out of prison you are going to

1    have the choice to make of getting into a cycle of repeat

2    offenses, going back to jail, repeat offense, going back to

3    jail, or you can decide to make something of your life.

4         And I think reviewing your record and hearing about

5    you today from your lawyer, I think you're capable of more than

6    that.

7         Do you like to read?

8         THE DEFENDANT:  Yeah.

9         THE COURT:  Do you like history?

10        THE DEFENDANT:  Yeah.

11        THE COURT:  All right.  When you are in prison you

12   should ask for a book, any book that you can get your hands on

13   of someone that has the same name as you.  Michael Collins was

14   one of the leaders of the Irish revolution to free Ireland from

15   the rule of Great Britain in the early Twentieth Century.  He's

16   considered one of the heroes of Ireland.  You and he share the

17   same name.  And he died for the cause of his country to be free

18   from Britain.

19        I think you could learn a lot about his life and learn

20   a lot about what a life can do and a difference you can make in

21   the world.  You don't have to be the leader of a revolution to

22   be someone and do something positive in your life.

23        So if you can get a chance to get your hands on

24   history books about the person that shares your name, I think

25   you will find a lot in there that you can identify with.  All

1  right?

2          THE DEFENDANT:  Yep.

3          THE COURT:  Okay.  I am prepared to rule on the

4  defendant's motion for a downward variance.

5          Now, Mr. Golla, you had sought a sentence of 48 months

6  for your client, which is a 32 percent downward variance from

7  the 70-month bottom of the original Guideline sentencing range.

8  Does your client now seek a similar 32 percent reduction off

9  the 57-month bottom of the revised Guideline sentencing range

10  that I have calculated after my downward departure, which I

11  note yields a custodial sentence of 39 months?

12          MR. GOLLA:  Yes, your Honor.

13          THE COURT:  All right.  Is there an objection to that,

14  Mr. Brown?

15          MR. BROWN:  Your Honor, I have nothing to add.

16          THE COURT:  All right.  With respect to the motion,

17  Mr. Collins seeks a variant sentence on the following grounds:

18          First, he points to the addition of a two-level

19  enhancement in the Guidelines for this crime that was adopted

20  in 2006.  The defendant points out that had he committed his

21  offense six years earlier, his conduct would have occurred

22  prior to the effective date of the Guideline Amendment 691,

23  which is the subject of the two-level enhancement that is at

24  plea here today, and that the bottom of his advisory Guideline

25  sentencing range six years ago would have been 57 months for an

1    Offense Level of 19 as opposed to the bottom of the Guideline

2    range of 70 months for an Offense Level of 21.

3         With this in mind it's difficult to understand how the

4    recent two -- I agree with Mr. Golla, it's difficult to

5    understand how the recent two-level additional enhancement is

6    not greater than necessary.  In other words for 17 years prior

7    to November 2006 the previous two-level enhancement was

8    determined to be sufficient under Section 3553(a), and had this

9    Court at that time applied the current four-level enhancement,

10   a defendant could have contended, with some merit, that such an

11   enhanced sentence would have been greater than necessary.

12        I agree with the defendant and find that the

13   application of the additional two-level enhancement results in

14   a sentence greater than necessary to achieve the statutory

15   sentencing goals under Section 3553(a).

16        In his motion Mr. Golla also points out that the

17   two-level added enhancement was justified only by a cursory

18   unexplained statement in the amendment.  The defendant argues

19   that there is no evidence that Amendment 691 was supported by a

20   careful study, empirical data or national experience as

21   required by the Supreme Court in **Kimbrough** vs. United States,

22   128 Supreme Court 558, at 575; and that as a result I should

23   also vary downward from the Guideline sentencing range

24   determined by a total Offense Level of 21.

25        I find that the lack of a careful study of any

empirical data or national experience performed or analyzed by the Sentencing Commission in support of Amendment 691 is an additional and separate ground upon which to grant the defendant's downward variant motion.

The remaining grounds advanced by Mr. Collins in his motion pertaining to his personal history and characteristics are factors which I have separately considered in my earlier analysis of the Section 3553(a) sentencing factors as they apply to Mr. Collins.

For all these reasons, I find that the statutory purposes of sentencing are best served by granting the defendant's motion for a downward variance.

I intend to sentence the defendant to a period of imprisonment of 39 months, to be followed by a term of supervised release of three years. Given the defendant's lack of financial means I intend to waive payment of any fine other than the special assessment of $100.

Given the dissimilarity of this defendant in terms of his history and characteristics and the nature of his involvement in the underlying offense, I find that any disparity between the defendant's sentence and the sentences received by similarly situated defendants convicted of this offense will not be unwarranted and that a non-Guideline sentence meaningfully reflects a careful analysis of the statutory sentencing factors.

1          Before I actually impose sentence, I will afford

2    counsel a final opportunity to make any record they believe

3    appropriate.

4          Mr. Brown.

5          MR. BROWN:  Nothing further, your Honor.

6          THE COURT:  Thank you, sir.

7          Mr. Golla.

8          MR. GOLLA:  Nothing further, your Honor.

9          THE COURT:  All right.  I have heard the arguments of

10   counsel, the defendant's allocution, I've considered the

11   Guidelines policy statements, the Section 3553(a) sentencing

12   factors and the recommendations of the probation officer.

13         I find that a Guideline sentence in this case would be

14   greater than necessary to accomplish the goals of sentencing

15   and will instead impose a sentence below the Guideline

16   sentencing range.

17         In addition, I find that the sentence I will impose in

18   this case reflects the seriousness of the offense, affords

19   adequate deterrence to future criminal conduct and will protect

20   the public from further crimes of this defendant.

21         Accordingly, pursuant to the Sentencing Reform Act of

22   1984, it is the judgment of this Court that the defendant,

23   Michael Ivory Collins, be committed to the custody of the

24   Bureau of Prisons to be imprisoned for a term of 39 months.

25         In serving his term of incarceration the Court

recommends that the director of the Bureau of Prisons give the defendant full credit for his time served in pretrial detention. The Court also recommends that the defendant be incarcerated with the Colorado Department of Corrections to serve his custodial sentence in this case.

Upon release of imprisonment the defendant shall be placed on supervised release for a period of three years. Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which he is released.

While on supervised release the defendant shall not commit another federal, state or local crime, shall not possess a firearm, as defined in Section 18, United States Code, 921, and he shall comply with the standard conditions that have been adopted by this Court.

The defendant shall not unlawfully possess and he shall refrain from unlawfully using a controlled substance. The defendant shall submit to one drug test within 15 days of release on supervised release and two periodic tests thereafter.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

The Court finds that the following special conditions of supervision are determined to be reasonably related to the factors enumerated in Section 3553(a) and 3583(d); and,

1  further, based on the nature and circumstances of the offense

2  and the history and characteristics of this particular

3  defendant, the following conditions do not constitute a greater

4  deprivation of liberty than reasonably necessary to accomplish

5  the goals of sentencing:

6       No. 1.  The defendant shall participate in and

7  successfully complete a program of testing and/or treatment for

8  substance abuse as approved by the probation officer until such

9  time as the defendant is released from the program by the

10  probation officer.  The defendant shall abstain from the use of

11  alcohol or other intoxicants during the course of treatment and

12  he shall pay the cost of treatment as directed by the probation

13  officer.

14       The defendant shall participate in and successfully

15  complete a program of mental health treatment as approved by

16  the probation officer until such time as the defendant is

17  released from the program by the probation officer.  The

18  defendant shall pay the costs of treatment as directed by the

19  probation officer.  The Court authorizes the probation officer

20  to release to the treatment agency all psychological reports

21  and/or the presentence report for continuity of treatment.

22       No. 3.  The defendant shall remain

23  medication-compliant and he shall take all medications that are

24  prescribed by his treating healthcare provider.  The defendant

25  shall cooperate with random blood tests as requested by his

treating healthcare provider and/or the supervising probation officer to ensure that a therapeutic level of his prescribed medications is maintained; and

No. 4.  The defendant shall not associate with nor shall he have any contact with gang members and shall not participate in any gang activity, to include displaying gang paraphernalia.

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and the defendant's agreement in his Plea Agreement, the defendant shall forfeit to the United States any and all property referenced and stipulated to in the Plea Agreement.

The defendant shall pay a special assessment of $100, which shall be due and payable immediately.

The Court finds that the defendant does not have the ability to pay a fine, so the Court will waive the payment of any fine in this case apart from the special assessment.

Now, Mr. Collins, you have the right to appeal the sentence that I have just imposed and in very limited circumstances your conviction by guilty plea.  If you wish to file such an appeal, a notice of appeal must be filed with the clerk of the Court within 14 days after the entry of judgment or the right to appeal will be lost.

If you are unable to afford an attorney for an appeal, the Court will appoint one to represent you.  If you are unable to afford the fees for filing an appeal, you may file a request

1    with the Court that such fees be waived.

2            All right.  Is there anything further from the

3    government at this time?

4            MR. BROWN:  No, your Honor.

5            THE COURT:  All right.  Anything further from the

6    defendant?

7            MR. GOLLA:  No, your Honor.  Thank you.

8            THE COURT:  Anything further from the probation

9    officer?

10           THE PROBATION OFFICER:  No, your Honor.  Thank you.

11           THE COURT:  All right.  Mr. Collins, good luck to you.

12           THE DEFENDANT:  Thank you.

13           THE COURT:  The defendant is remanded to the custody

14   of the United States Marshal.

15           Thank you.  That will be all.

16       (Proceedings concluded at 2:44 p.m.)

17                    **REPORTER'S CERTIFICATE**

18       I certify that the foregoing is a correct transcript from

19   the record of proceedings in the above-entitled matter.  Dated

20   at Denver, Colorado, this 18th day of June, 2016.

21

22                         _____

23                              Gwen Daniel

24

25